**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA  : | |
| : | |
| v.  : | Crim. Case No. 23-CR-00183 (DLB) |
| : | |
| LAWRENCE N. HARRIS  : | |
| : | |
| Defendant.  : | |
| _____  : | |

**DEFENDANT'S MOTION TO SUPPRESS MOTOR VEHICLE SEARCH AND SUBSEQUENT SEARCH OF TWO SEPARATE CELLPHONES INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant, LAWRENCE HARRIS, by and through his counsel Brian K. McDaniel, respectfully moves this Court to suppress all evidence seized in violation of the Fourth Amendment as a result of the execution of a warrantless search of a vehicle after a purported traffic stop, and the subsequent search warrant execution on two Iphone cellular devices; one identified as a Black IPhone with a clear case (PGPD Prop. #22152214) and the other a Black IPhone in a camo case (PGPD Prop. #22152215). Such evidence includes usernames, passwords, saved/deleted photographs, contacts and phone book, save/deleted text messages and other information. Mr. Harris also moves, under the Fourth Amendment, to suppress any items found during the continued investigation as a result of the illegal search and seizures, as fruit of the poisonous tree. The grounds for this motion are more fully stated in the accompanying memorandum of law. Mr. Harris requests an evidentiary hearing on this motion.

Respectfully submitted,

/s/Brian K. McDaniel_____
Brian K. McDaniel, Esq.
1001 L. Street S.E.
Washington, D.C. 20003

Telephone (202) 331 – 0793
bkmassociates@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. Case No. 23-CR-00183 (DLB) |
| : | |
| LAWRENCE N. HARRIS : | |
| : | |
| Defendant. : | |
| _____: | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE**

**A.    BACKGROUND.**

Mr. Harris is charged in a five count Superseding Indictment with criminal conduct that allegedly took place between April 10, 2022 and November 16, 2023. He is charged with Count 1: Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922 (g)(1); Count 2: Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922 (g)(1); Count 3: Possession with the Intent to Distribute in violation of 21 U.S.C. § 841(a)(1); Count 4: Conspiracy to Ditribute a Controlled Substance in violation of 21 U.S.C. § 846; and Count 5: Possession of a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1)(B)(ii).

It is alleged that on October 26, 2022 PFC T. Waters was conducting "proactive enforcement" in the corridor of St. Barnabas Road and Wheeler Road in Oxon Hill, MD 20745. In the at issue Affidavit requesting permission to search the phones of Mr. Harris, PFC T. Waters states that on this date and at approximately 11:40 am he observed a Dark Grey Porshce Macan SUV which was operating with what the officer identified as heavy window tinting. The Affdavit did not assert that the vehicle was speeding or committing any other traffic offense in violation of the traffic laws of Maryland. The officer then made

a stop of the vehicle based upon the belief that the tint on the vehichle would have made it eligible for a traffic citation for an inappropriate level of tinting. After activating his emergency lights and sirens, the vehicle pulled over whereupon the officer identified Mr. Harris as the driver. After having been provided a temporary registration card, the officer alleges that he was able to determine that the registration for the vehicle was not valid, another traffic violation. Additionally, the officer alleges that when speaking with Mr. Harris he was able to detect the odor of "burnt marijuana emanating from the passenger compartment of the vehicle". Notably, the Affiant did not represent that, while looking into the vehicle, he was able to see either any marijuana or other contraband in plain view which would have supported a finding of probable cause for the warrantless search of the vehicle. Subsequently, the officer demanded that Mr. Harris alight from the vehicle and then conducted the warrantless search.

After the acquiring of the key fob from Mr. Harris while he was detained and at the back of the vehicle, law enforcement alleges that a Glock 27 Handgun, bearing serial number #BLHR490 was located in the glove compartment. Upon the discovery of the firearm in the vehicle Mr. Harris was placed under arrest. In a search incident to his arrest, two cellular phones were confiscated from Mr. Harris and were subsequently the focus of two separate search warrant request, one from November 2, 2022 and the other from March 13, 2023. (Exhibits 1 and 2 attahced hereto).

**B.**             **ARGUMENT**

    **1.  All Physical Evidence Obtained from Mr. Harris Was Secured In Violation Of His Fourth Amendment Rights and Must Be Suppressed.**

Mr. Harris was illegally seized. "Stopping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of the [Fourth] Amendment."

4

*Delaware v. Prouse*, 440 U.S. 648, 654 (1979). In order to justify such a seizure, the officer must have sufficient facts to establish, at a minimum, a reasonable articulable suspicion of unlawful conduct. *Id.* at 663. A search following an unlawful seizure cannot be justified based upon what the search reveals. *Brown v. United States*, 590 A.2d 1008, 1013 (1991) quoting, *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

When Mr. Harris was seized in the morning of October 26, 2022, he had not committed any traffic offense which would have justified the initial stop of his vehicle or his extraction from the same. Mr. Harris was able to produce a D.C. learners Permit and although the officers purport to have determined that the vehicle regristration was not current, this fact as well as any illegal tint, should have resulted in the issuance of a traffic citation and did not necessitate the extraction of Mr. Harris from the vehicle. It was only after Mr. Harris was illegally seized that law enforcement was purportedly able to see in plain view, an amount of suspected marijuana. This post hoc establishment of probable cause can not be relied upon in the presence of the originally tainted extraction of Mr. Harris from the vehicle. Additionally, the subsequent recovery of the firearm from the locked glove compartment should suffer the same fate as it is subject to the same anaylsis. Even if officers believed that Mr. Harris had committed some traffic infraction, the proper response would have been to issue a citation to Mr. Harris and to allow him to continue on. Testimony will also reveal that he had not committed any other illegal act in the view of the officers which would have provided even articulable suspicion justifying the investigatory intrusion on the rights of Mr. Harris. As a result of his illegal seizure, police allegedly obtained tangible evidence. The police seized Mr. Harris without reasonable articulable suspicion or probable cause in violation of *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

5

*Terry* permits only a very brief detention upon a showing of some reasonable articulable suspicion that a criminal act is being committed. The detention should last no longer than necessary for the legitimate purpose prompted by the stop. *United States v. Sharpe*, 470 U.S. 675 (1985).

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981), the Supreme Court held that, "when police have made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." Here the arrest is tainted by the initial unlawful stop and seizure of Mr. Harris which took place absent the requisite *articulable suspicion* mandated by *Terry*. Once an illegal seizure is established, the Government has the burden of proving that the causal chain was sufficiently attenuated by an independent act to dissipate the taint of the illegality. While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct. *United States v. Jones*, 374 F.Supp.2d 143 (D.D.C. 2005). Any assertion that Mr. Harris abandoned the items which were recovered from the vehicle or that he consented to the search of the same after law enforcement had already illegally entered the same must be viewed through the prism of the illegality of the initial stop of the vehicle.

**2.   Any Evidence from the phone Must Be Suppressed Because The Warrant Is Not Supported By Probable Cause, the warrant language is too broad And No Good Faith Exception Applies.**

The test for determining probable cause is whether the facts presented to a judicial officer establish a "substantial probability" that the items sought will be found in the target location. *Illinois v. Gates*, 462 U.S. 213 (1983). The determination of probable cause calls

for a "practical commonsense" inquiry. Id. at 238. Probable cause is determined under a "totality of the circumstances" analysis. A judicial officer who is considering an application for a search warrant must decide "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 217. "This standard is not defined by bright lines and rigid boundaries. Instead, the standard allows a magistrate judge to review the facts and circumstances as a whole and make a common sense determination of whether "there is a fair probability that contraband or evidence of a crime will be found at a particular place. *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). Evidence seized pursuant to a warrant lacking probable cause must be suppressed if exclusion of the evidence "will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897, 918 (1984). When an affidavit is lacking in probable cause, evidence seized pursuant to the warrant may be admitted only where the "affidavit was made in good faith, the warrant was issued by a detached and neutral magistrate and the warrant was reasonably relied on in good faith by the police officers." *Id*.

      A review of the at issue Affidavit in support of the search warrant reveals, in large part, a reliance on the mere presence of Defendant Harris in the vehicle in question as well as his employ of at least one of the cellphones at the time of his arrest. Indeed when law enforcement placed Mr. Harris in custody, all that could be said about their observations of him is that he had requested access to the phone to locate phone numbers which were contained therein. No prior investigation had been conducted that would necessitate a finding that he had used the phones in connection with any illegal activity. Even if one

7

were to assign the speculative meaning to his presence as is employed by law enforcement in the charging of this case, there is nothing in the affidavit which supports his use of the at issue cellphone in connection with any possession of the firearm or the marijuana purportedly found in the vehicle. "The ultimate touchstone of the Fourth Amendment is 'reasonableness'." *Brigham City v. Stuart*, 547 U.S. 398 (2006). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, … reasonableness generally requires the obtaining of a judicial warrant." *Venonia School Dist. 47 v. Acton*, 515 U.S. 646 (1995).

Upon information and belief, a hearing in this matter will reveal that law enforcement accessed the phones to acquire information even before the acquisition of the warrants. In *Riley v. California*, 134 S.Ct. 2473 (2014), the Supreme Court held that they "generally determine whether to exempt a given type of search from the warrant requirement 'by assessing on the one hand, the degree to which it intrudes upon and individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Riley* citing *Wyoming v. Houghton*, 526 U.S. 295, 300(1999). Here the question is whether law enforcement had any legitimate reason to search the at issue cell phones and access their digital content absent the warrant required by the relevant case law. In support of their holding in *Riley* advancing the notion that a search of the Defendant's phone was constitutionally violative, the court noted that "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape. Law enforcement officers remain free to examine the physical aspects of a phone to ensure that it will not be used as a weapon…Once an officer has secured a phone and eliminated any potential physical

8

threats… data on the phone can endanger no one." In *Riley*, like here, law enforcement officers secured Mr. Riley's phone and accessed the same, viewing photographs and contact information, which resulted in him being charged with an earlier shooting. The court, in reversing his earlier conviction, held that "the interest in protecting officer's safety did not justify dispensing with warrant requirements for searches of cell phone data."

"Government conduct is a 'search' within the meaning of the Fourth Amendment if it invades 'an actual expectation of privacy… that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347 (2001). " Most people have a cellphone and carry it with them practically everywhere they go. One consequence of this is that locating and tracking a cellphone using a cell-site simulator has the substantial potential to expose the owner's intimate personal information" *Jones* citing *Tracey v. State,* 152 So.3d 504 (Fla. 2014). In *Jones*, law enforcement employed a "sting-ray" device which was a cell site simulator that provided information regarding the location of a particular cellphone used by defendant Jones. The Court held that, given the strong expectation of privacy attending the use of a private cellphone, law enforcement was required to secure a search warrant prior to searching the cellphone or accessing any of the information contained therein. Here law enforcement sought to discern the same type of information which was proscribed in the Jones matter, and that should likewise be suppressed.

Additionally, there is not even the slightest support present for any nexus between the cellphones in question and for which the search warrants were sought and any likelihood that those items listed in the addendum to the search warrant would be found in that location. "A magistrate's determination of probable cause justifying the issuance of a warrant must be supported by an affidavit that discloses the underlying circumstances from

9

which the affiant has concluded that his information is reliable [and] must contain a statement of the underlying circumstances which enable the magistrate independently to judge the validity of the affiant's conclusion that the things to be seized are where he says they are." *U.S. v. Bailey*, 458 F.2d 408 (9th Cir. 1972) citing *Aguilar v. Texas*, 378 U.S. 108 (1964).

Nor may the government find safe harbor in the *Leon* exception. Under that doctrine, the affidavit must be made in good faith, and the warrant reasonably must be relied upon in good faith by the executing officers. Here, the affiant was aware of the prior search of the cellphone, the absence of the probable cause necessary for the issuance of the warrant, and the overbroadness of the information requested.

> 2. **The Evidence Should Be Suppressed As the Warrant Request was Unconstitutionally Broad.**

The Fourth Amendment's Warrant Clause commands that 'no Warrants shall issue, but upon probable casue, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Warrant Clause creates dual constitutional mandates of probable cause and particularity, so police may not "rummage at will" through a person's private matters. *Arizona v. Gant*, 556 U.S. 332, 345 (2009). Judges must follow a strict analysis before approving a warrant to ensure they are not overbroad and that they sufficiently particularize the basis of the search: "The probable cause standard is well defined. A judge considering an application for a search warrant mus determine whether, in light of all the circumstances described in the supporting affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gant*, 462 U.S. 213, 238 (1983). To be sufficient a warrant affidavit "must demonstrate casue to believe" that an item of evidence

"is likely to be found at the place to be searched" and that there is "a nexus between the item to be seized and [the] criminal behavior" being investigated. *Groh v. Ramirez*, 540 U.S. 551, 568 (2004); *Warden Md Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). A judge should not issue a warrant as "a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. Instead, the warrant affidavit "must contain adequate supporting facts about the underlying circumstances to show that probable casue exists for the issuance of the warrant." *Burns v. United States*, 235 A.3d 758 (D.C. 2020) <u>citing</u> *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006). The "particualrized facts" and circumstances that must be set forth in the affidavit are essential to the judge's finding of "a fair probability that evidence of a crime will be located on the premises of the proposed search" and "form the central basis of the [independent] probable cause determination." *Burns*, 235 A.2d at 772 (internal citations omitted). Only then can we ensure that any subsequent search based on the warrant "will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searchers that the Framers intended to prohibit. *Id.* at 772. An affidavit that states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit, and fails to establish probable cause." *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008). Particualrized facts and circumstances are necessary for the reviewing judge to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)(quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948).

Importantly, "a search wrrant is not available as a general investigative tool for law enforcement." *Burns* at 777. It is clear that a "law enforcement officert's interest in

11

discovering leads or otherwise further[ing] his investigation, no matter how understandable in the circustances, is never an acceptable substitute for the constitutionally required showing of probable casue that must be made before a search warrant may be issued." *Id.*

Here law enforcement's warrants were issued based in large part on their having been possessed by Mr. Harris on the date of his arrest. There was no long existing investigation into Mr. Harris which would have supported the conclusion that the type of information sought by the warrants would be present. A review of the language contained in the affidavits reveal that the requests were absent the type of particularity required by the constitution and the granting of the same allowed the broad unfettered intrusion into the privacy interests of Mr. Harris that the Warrant Clause sought to avoid.

## **CONCLUSION**

For the reasons stated above, and for any other reasons that the Court may deem just and proper, defendant Lawrence Harris requests that all physical and electronic evidence recovered as a result of the unconstitutional seizure and arrest of Mr. Harris, as well as the extraction of information from his cellphones be suppressed from use at trial. Mr. Harris requests an evidentiary hearing on this motion.

Respectfully submitted,

/s/Brian K. McDaniel
Brian K. McDaniel, Esq.
1001 L. Street S.E.
Washington, D.C. 20003
Telephone (202) 331 – 0793
bkmassociates@aol.com

12

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2025, a copy of the foregoing Motion To Suppress Tangible Evidence Recovered from Cellphones has been served upon all interested parties by ECF filing.

/s/Brian K. McDaniel
Brian K. McDaniel, Esq.