**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **Case No. DLB-23-183** |
| | * | |
| **LAWRENCE N. HARRIS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTIONS TO SUPPRESS ECF Nos. 109, 110**

**Table of Contents**

**INTRODUCTION**
   **A.  Traffic Stop of Defendant**................................................................... 2
   **B.  PFC Waters Approaches the Porsche to Initiate the Traffic Stop Investigation**....... 3
   **C.  PFC Waters Recovers Marijuana and a Firearm in the Glovebox of the Porsche**..... 4
   **D.  Law Enforcement's Seizure of Two iPhones**.................................... 5
   **E.  The Issuance and Execution of a Search Warrant for the Defendant's Cellphone**... 5
   **F.  Search of the Defendant's Black iPhone**............................................ 6
   **G.  Search Warrant for the Defendant's Camo iPhone**.................................. 7
   **H.  Search of the Defendant's Camo iPhone**........................................... 7
   **I.  Search Warrant for Delmar Residence**............................................. 7
   **J.  Execution of Search Warrant at Delmar Residence**............................... 9
**I.  THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE FROM THE PORSCHE BECAUSE THE TRAFFIC STOP WAS
CONSTITUTIONALLY VALID**............................................................... 11

   **A.  The Unauthorized Level of Tint on the Defendant's Vehicle Gave Law Enforcement
   a Lawful Basis to Conduct a Traffic Stop on the Vehicle**............................... 11
   **B.  Law Enforcement Lawfully Extended the Traffic Stop by Ordering Harris to Exit
   the Vehicle to Investigate the Invalid Registration Plates and the Presence of
   Marijuana**................................................................................ 13
     **1.  The Traffic Stop was Lawfully Extended Based on Reasonable Suspicion that the
     Defendant's Vehicle was Displaying Invalid License Plates**...................... 13

     **2.  The Traffic Stop was Lawfully Extended Based on Reasonable Suspicion that the
     Defendant had Marijuana in the Porsche**........................................ 14
   **C.  Law Enforcement had Probable Cause to Conduct a Warrantless Search of Harris'
   Vehicle Under the Plain View Doctrine**.............................................. 15

**II.    THE COURT SHOULD NOT SUPPRESS THE EVIDENCE OBTAINED FROM THE PHONES AND RESIDENTIAL WARRANTS BECAUSE THE AFFIDAVIT ARTICULATED PROBABLE CAUSE FOR THE WARRANTS, AND EVEN IF THEY DID NOT, THE GOOD FAITH EXCEPTION APPLIES**..................................................... 16

**A.    Legal Standard—Substantial Basis**.............................................................. 16

    **1.    The Court Should Not Suppress the Evidence from the Phone Warrants.**........... 18

    **2.    The Court Should Not Suppress the Evidence from the Residential Warrant.**..... 23

## INTRODUCTION

The United States of America, by and through undersigned counsel, respectfully submits the following response in opposition to Lawrence Nathaniel Harris' ("the Defendant or Harris'") Motion to Suppress Motor Vehicle Search and Subsequent Search of Two Separate Cellphones, ECF No. 109, and Motion to Suppress Evidence, ECF No. 110. The Defendant's motions to suppress should be denied.

## FACTUAL BACKGROUND

### A.    Traffic Stop of Defendant

On October 26, 2022, at approximately 11:40 a.m., Patrolman First Class Thomas Waters ("PFC Waters") saw a dark Gray Porsche Macan SUV (the "Porsche") with heavily tinted windows and windshield. ECF No. 109-1, USA_000106.[1] Because of the windows' heavy tint, PFC Waters[2] could not see how many people were in the vehicle. *Id*. PFC Waters saw that the Porsche had temporary registration plates affixed to the front and back of the vehicle, bearing Maryland tag number TR091586. *Id*. While in his cruiser, PFC Waters called into the Public

---

[1] Because the Government is responding to the Defendant's motions to suppress, the Government relies primarily on the relevant search warrant affidavits to recount the factual background. Notably, the Defendant does not argue that the affidavits to challenged search warrants contain any falsehoods. At trial, the Government will establish the relevant facts through various sources.

[2] Because the Defendant does not contest the factual accuracy of the search warrant affidavits, the Government does not intend to call PFC Waters to testify at the motions hearing unless so directed by the Court.

Safety Communications dispatch channel to check the validity of the temporary registration plates. *Id.* The dispatcher told PFC Waters that the temporary registration plates were not registered with the Maryland Motor Vehicle Administration ("MVA"). *Id.* Based on the information obtained from the dispatcher and the vehicle's heavy tint, PFC Waters activated his emergency lights to stop the Porsche. *Id.* The Porsche pulled into a Citgo gas station parking lot and came to a stop.



*Seen above: The tint meter displaying the number "07" indicating that the tint on the driver's side window of Harris' Porsche exceeded the legal limit.*

### B.    PFC Waters Approaches the Porsche to Initiate the Traffic Stop Investigation

PFC Waters exited his cruiser, walked up to the Porsche, and spoke with Lawrence Nathaniel Harris ("Harris" or the "Defendant") who was the sole occupant and driver. ECF No. 109-1, USA_000106. Upon request, the Defendant provided PFC Waters with his DC Learners Permit as well as a temporary registration car for the Porsche. *Id.* During his conversation with the Defendant, PFC Waters also smelled the odor of burnt marijuana coming from the Porsche. *Id.* Because of the non-valid vehicle registration and the smell of burnt marijuana, PFC Waters ordered the Defendant out of the Porsche so that law enforcement could search the vehicle and

also check the VIN number. *Id.* After the Defendant left the Porsche, he sat on the police cruiser. *Id.* Law enforcement then used the VIN number to conduct a registration check on the Porsche and determined that the Porsche lacked an active registration. *Id.*

### C.     PFC Waters Recovers Marijuana and a Firearm in the Glovebox of the Porsche

PFC Waters asked the Defendant if there were more drugs in the Porsche, and the Defendant said there "wasn't nothing illegal." *Id.* During the search, law enforcement found several grams of suspected marijuana in the Porsche. *Id.*

PFC Waters attempted to check the glovebox in the Porsche, but it was locked. *Id.* As explained in the subsequent search warrant affidavit, based on his training, knowledge, and experience, PFC Waters knew that "individuals involved in criminal activity often conceal items of contraband, or illegal in nature, and of value inside locked cases and containers for transport in vehicles, to include safes, center consoles, glove boxes and other security devices." *Id.* Additionally, PFC Waters had found firearms and drugs in prior searches of gloveboxes. *Id.*

Upon request, Harris provided PFC Waters the key fob to the Porsche so that PFC Waters could open the glovebox. *Id.* at USA_000107. The Defendant told PFC Waters that there was nothing illegal in the car, but PFC Waters observed that the Defendant was visibly nervous. *Id.* PFC Waters found a Glock 27 Handgun loaded with a 30-round magazine. *Id.* A Glock Auto Switch was attached to the Glock 27 Handgun. *Id.*

D.      **Law Enforcement's Seizure of Two iPhones**

During the search of the car and the Defendant, law enforcement found two iPhones.  First, law enforcement found a black iPhone in a clear case (the "black iPhone") on the Defendant. During the traffic stop, officers observed the Defendant using the black iPhone.  *Id.* at USA_000108.  For example, the Defendant called an associate named "Osama."  *Id.*  After his arrest and transport to the police station, he asked law enforcement to access the black iPhone to retrieve certain numbers.  *Id.*

Second, officers found an iPhone with a camo case (the "camo iPhone") in the front passenger seat of the Porsche.  Ex. 1, USA_001028.  The camo iPhone was next to the suspected marijuana that law enforcement recovered.  *Id*.

E.      **The Issuance and Execution of a Search Warrant for the Defendant's Cellphone**

PFC Waters subsequently sought a search warrant to search the Defendant's black iPhone that was seized from him during his arrest. On October 27, 2022, the Honorable Wytonja Curry, Prince George's County Circuit Court Judge, authorized the requested search.  ECF No. 109-1, USA_000113.   In the supporting affidavit, PFC Waters recounted the factual background described above regarding the stop of the Porsche and the seizure of the gun and drugs. *Id.* at USA_000105-107.

PFC Waters then noted that the Defendant was prohibited from possessing firearms and ammunition at the time of the stop.  *Id.* at USA_000109.  PFC Waters explained that he knew "through training, knowledge and experience, that individuals who are prohibited from possessing firearms, firearms components and ammunition are known to acquire said firearms often through a third party source." *Id.*  And "oftentimes," to acquire firearms, prohibited persons use "a cellular device; whether it is through the use of text messaging, cell phone calls, social media or a third

party messaging application." *Id.*  Additionally, PFC Waters knew that individuals use "electronic devices as a ledger" to memorialize the illegal sale of firearms." *Id.*  PFC Waters also explained that he knew that "individuals involved in the sale, purchase and distribution of firearms, firearms components and ammunition often send or receive digital photographs or  communications of themselves holding said firearms, firearms components and ammunition to send to potential customers. *Id.*  In order to do so, individuals must use the digital photograph taking capabilities possessed by cellular devices or social media apps." *Id.* at USA_000110.  In a separate section to the affidavit justifying "the place to be searched and the items to be seized," PFC Waters reiterated that "cellular phones may contain evidence relevant to the acquisition and possession of firearms, firearms components and ammunition" and also that "persons illicitly possessing firearms will engage in black-market sales of firearms . . . and that these sales are often facilitated via their cellular phones." *Id.*  PFC Waters concluded the affidavit by attesting that evidence of illegal firearms trafficking, along with other gun crimes, may be found on the phone.  *Id.* at USA_000111 (citing Maryland Code, Criminal Law § 4-305.1 & Maryland Code, Public Safety § 5-144(a)(1)).

### F.    Search of the Defendant's Black iPhone

When officers searched the Defendant's black iPhone, they found a text message that the Defendant sent to his co-defendant Ahmed Hussain that said, "Aye u gotta keep them bags . . . da tucker rd spot and we gotta put all dese extra irons . . . dere too and just keep what we toatin!!  At least till I get off dis curfew and can change my addy u know I'm still on dis box . . . shyt dem peoples cud come hit dis joint wenevaa."  ECF No. 110-1, USA_000125.

Additionally, the location information from the Defendant's black iPhone revealed that the phone pinged at 4325 Delmar Avenue, Temple Hills, Maryland ("Delmar Residence") several

times between October 10 and 23, 2022.  *Id.* at USA_000128.  The Defendant provided this same address when he was arrested on October 26, 2022.  *Id.* at USA_000127.

**G.    Search Warrant for the Defendant's Camo iPhone**

PFC Waters next sought a search warrant to search the Defendant's camo iPhone that law enforcement found in the Porsche.  On November 4, 2022, the Honorable Gladys M. Weatherspoon, Prince George's County Circuit Court Judge, authorized the requested search.  Ex. 1, USA_001021.

In the supporting affidavit, PFC Waters recounted the factual background described above regarding the stop of the Porsche, the seizure of the gun and drugs, and the contents of the black iPhone.  *Id.* at USA_001024-USA_001033.  PFC Waters then justified searching the camo iPhone for similar reasons that he articulated for searching the black iPhone.  *Id.* at USA_001033.

**H.    Search of the Defendant's Camo iPhone**

When officers searched the Defendant's camo iPhone, they found photos of the Defendant at the Delmar Residence and also location pings establishing that the Defendant had lived at the Delmar Residence for at least six months.  ECF No. 110-1, USA_000129.  The pictures on the phone included one showing the Defendant sitting on a couch with a firearm and a large bag of marijuana.  *Id.* at USA_000130.

**I.    Search Warrant for Delmar Residence**

PFC Waters—along with a co-affiant—applied for a search warrant to search the Delmar Residence.  On November 15, 2022, the Honorable Gladys M. Weatherspoon, Prince George's County Circuit Court Judge, authorized the requested search.  *Id.* at USA_000115.

The affidavit recounted the traffic stop and the results from the searches of the black iPhone and the camo iPhone.  *Id.* at USA_000119-131.

7

The affidavit then explained that the Defendant was still residing at the Delmar Address because he was required to stay at that address to comply with pre-trial release for a separate Washington, D.C. case. *Id.* at USA_000132. Law enforcement also found Instagram videos of the Defendant advertising the sale of marijuana that he posted while at the Delmar Residence.



*Seen above: Screenshots of the Defendant's Instagram story advertising marijuana for sale. Id. at USA_000134.*

The affidavit further explained that based on the affiants' training and experience, they knew that "individuals in illegal possession of firearms and/or ammunition typically store additional ammunition or firearms paraphernalia inside of their homes." *Id.* at USA_000135. The affidavit then provided similar justifications for searching the Delmar Residence for evidence of illegal firearms and controlled dangerous substances. *Id.* at USA_000136-138.

**J.**    **Execution of Search Warrant at Delmar Residence**

On November 16, 2022, law enforcement executed the search warrant authorized for the Delmar Residence.

At the time of the execution of the warrant, Harris and four other individuals were inside the residence. After law enforcement announced their presence at Harris' residence—but before entering—two officers at the scene observed an individual toss a bag and a firearm out of one the bedroom windows located on the second floor of the residence. The officers recovered a Glock, Model: 42, .380 caliber, semi-automatic pistol, bearing serial number ADZT484. The firearm contained eight rounds of .380 caliber ammunition. Upon further inspection, the officers determined that the bag contained suspected marijuana.

Once law enforcement entered the residence, the officers observed a large hole in the screen located in one of the three bedrooms located on the second floor of the residence. Law enforcement discovered Harris' clothes and shoes, and a television mounted on the wall inside of the bedroom. In the other two bedrooms, law enforcement discovered identification cards and the like for the other two residents.

In the attic of the residence, law enforcement seized the following relevant items:

- A Black Ruger AR-15 .556 Caliber, bearing serial number 855-95377;
- A Black Chiappa PAK 9mm Rifle, bearing serial number RON2025342;
- Three magazines, two of which were loaded;
- Two fifty round load drums;
- A masterpiece Arms 9mm "Mac 9", bearing serial number F15430, loaded with an extended magazine containing approximately 38 rounds of ammunition;
- A .45 Automatic, semi-automatic pistol, Model 21, bearing serial number BLEY949 that was equipped with a full-auto sear switch;
- A large duffle bag that contained approximately 26 pounds of marijuana.
- A large red duffle bag that contained approximately 11 pounds of marijuana.



*Seen above: Photographs of the marijuana and firearms that were recovered from the attic at the Delmar Residence taken by law enforcement at the scene.*

## PROCEDURAL BACKGROUND

On May 28, 2023, a federal grand jury in the District of Maryland returned an indictment against Harris for one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1). ECF No. 1. Harris was arraigned on September 6, 2023. ECF No. 31.

On December 7, 2023, a federal grand jury in the District of Maryland returned a superseding indictment charging Harris with one count of felon in possession, in violation of 18

U.S.C. §922(g)(1), one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). ECF No. 57. Harris was arraigned on January 5, 2024. ECF No. 63.

On April 24, 2025, Harris moved to suppress the evidence that resulted from the traffic stop and the three search warrants. ECF Nos. 109, 110.

## DISCUSSION

## I. THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM THE PORSCHE BECAUSE THE TRAFFIC STOP WAS CONSTITUTIONALLY VALID

PFC Waters had probable cause to conduct a lawful stop on the Porsche because he observed the Defendant commit several traffic law violations. *See Wren* v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). For example, PFC Waters immediately noticed that Harris' windows and windshield were excessively tinted in violation of Md. Code Ann., Transp. §§ 22-406(i)(1) and 22-101. In addition, the dispatcher reported to PFC Waters that the temporary registration plates affixed to Harris' vehicle were invalid in violation of Md. Code Ann., Transp. § 13-411(e)(1).

### A. The Unauthorized Level of Tint on the Defendant's Vehicle Gave Law Enforcement a Lawful Basis to Conduct a Traffic Stop on the Vehicle

#### 1. The Traffic Stop was Valid Under Maryland's Window Tint Statute

PFC Waters had a lawful basis to stop the Porsche based on his observation of a heavily tinted windshield and windows that were not within the legal limit. Maryland Transportation Code prohibits vehicles from installing any tint materials to its windows that does not allow a light transmittance through the window of at least 35%. Md. Code Ann., Transp. § 22-406(i)(1)(i). Here,

PFC Waters had at the very least reasonable suspicion to stop the Defendant's vehicle after he observed what appeared to be an unauthorized level of tint on the Porsche's windows and windshield.  *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016) (explaining that "illegally tinted windows are alone 'sufficient to justify' a traffic stop").

### 2.  In the alternative, the Traffic Stop was Valid Under Maryland's Unsafe Vehicle Statute

PFC Waters also had reasonable suspicion to stop the Porsche based on Md. Code Ann., Transp. § 22-101—the unsafe vehicle statute—which prohibits *any person* from driving "*any vehicle*" in an "unsafe condition as to endanger *any person*". Md. Code Ann., Transp. § 22-101(a)(1)(i) (emphasis added).

As a threshold matter, heavily tinted windows create a safety concern for the driver and those in the vicinity of that driver. In Maryland, the legislature has determined that passenger vehicles must allow at least 35% of light transmittance.  *See* Md. Code Ann., Transp. § 22-406(i)(1)(i).  As Judge Hollander has explained, "The purpose of the tint regulation derives from concerns about officer safety in the context of traffic stops."  *United States v. Brandon*, 2023 WL 6961937, at *15 (D. Md. Oct. 19, 2023); *see also United States v. Stanfield*, 109 F.3d 976, 978 (4th Cir. 1997) (acknowledging that "the substantial government interest in officer safety which exists when law enforcement officers must approach vehicles with heavily tinted windows far outweighs any minimal privacy interest the suspect retains in the otherwise visible interior compartment of his vehicle").  Specifically, regarding the unsafe vehicle statue, the Maryland Court of Appeals has noted that a tinted vehicle lacking a label denoting the post-manufacturing light transmittance "may justify a citation under § 22–101 or § 23–105(a), a repair order, and some further investigation." *See State v. Williams*, 934 A.2d 38, 48 n. 3 (Md. 2007)

Here, the evidence establishes that PFC Waters saw the Porsche driving on a public road with heavily tinted windows and windshield such that PFC Waters could not determine how many occupants were inside the Porsche. Then, as he approached the Porsche on foot, he directed the Defendant to lower the back windows because he could not appropriately see into the Porsche. Later, when he tested the tint level of the Defendant's windows—it registered at 7% total light transmittance. Given the safety risks posed by heavily tinted windows, law enforcement had reasonable suspicion to stop the Defendant under § 22-101(a)(1)(i) because his excessive window tints constituted an "unsafe condition as to endanger any person."

**B.      Law Enforcement Lawfully Extended the Traffic Stop by Ordering Harris to Exit the Vehicle to Investigate the Invalid Registration Plates and the Presence of Marijuana**

PFC Waters lawfully extended the traffic stop to investigate traffic and criminal violations after smelling marijuana in the Porsche.  When an officer observes a traffic violation, the officer "is justified in stopping the vehicle for long enough to issue the driver [the requisite warning or] citation and determine that the driver is entitled to operate his vehicle." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). To extend the encounter with law enforcement beyond a traffic stop into an investigatory stop, the officer must lawfully obtain the driver's consent or have "reasonable suspicion" that illegal activity is afoot. *Id*. at 336. Here, PFC Waters had two lawful bases to extend the traffic stop: 1) to investigate the temporary registration plates affixed on the Porsche and 2) to investigate potential criminal activity after smelling the odor of burnt marijuana emanating from the Porsche.

**1.      The Traffic Stop was Lawfully Extended Based on Reasonable Suspicion that the Defendant's Vehicle was Displaying Invalid License Plates**

Under Maryland law, vehicles are required to display license plates issued by the MVA for the current registration period. Md. Code Ann., Transp. § 13-411(d)(1). Here, the dispatcher

informed PFC Waters that the temporary Maryland tags displayed on the Porsche were not registered with the MVA before he initiated a traffic stop. To further investigate the validity of the Defendant's vehicle registration, PFC Waters asked the Defendant for his driver's license and registration. After receiving a temporary registration card and a Washington D.C. learner's permit, PFC Waters instructed the Defendant to exit the Porsche so that he could access the VIN number to conduct a second registration check through the dispatch channel. Thus, PFC Waters' investigation of the Defendant's registration for his Porsche provided a lawful basis to initiate and extend the traffic stop.

### 2. The Traffic Stop was Lawfully Extended Based on Reasonable Suspicion that the Defendant had Marijuana in the Porsche

PFC Waters lawfully extended the traffic stop of the Defendant because he smelled marijuana coming from inside the Porsche and then saw marijuana inside the Porsche, which established probable cause to search the Porsche.[3]  *See United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car.").  And to effectuate the search of the Porsche, officers "were entitled to order [the Defendant] out of the vehicle while their search was accomplished."  *United States v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010).

Contrary to the Defendant's contention (at 5), PFC Waters did not need to cease the traffic stop after issuing the Defendant a traffic citation because he smelled marijuana from inside the Porsche. "There is no Fourth Amendment requirement that officers first complete the original purposes of a traffic stop when new circumstances arise that provide the officers with reasonable

---

[3] The stop happened on October 26, 2022.  Starting July 1, 2023, Maryland prohibited law enforcement from searching vehicles based on the odor of marijuana.  *See* Md. Code Ann., Crim. Proc. § 1-211 (a)(1).

suspicion that other criminal activity is afoot." *United States v. Davis*, No. 20-4315, 2022 WL 94529, at *2 (4th Cir. Jan. 10, 2022) (citing *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008)).  The Defendant cites no case law to support his argument that PFC Waters needed to cease the stop after issuing the traffic citation.

At this point, the purpose of the stop now included whether the Defendant was violating criminal law with respect to the odor and presence of marijuana inside the Porsche. As part of his investigation, PFC Waters asked the Defendant if there was any additional marijuana present other than what was in the front passenger-seat of the Defendant's vehicle. The Defendant acknowledged that he did have an amount of marijuana in the vehicle consistent with personal use. Based on this evidence, PFC Waters had probable cause to search the Porsche for additional contraband.

### C.    Law Enforcement had Probable Cause to Conduct a Warrantless Search of Harris' Vehicle Under the Plain View Doctrine

Once PFC Waters observed the marijuana in plain view, he had an additional basis to search the Porsche.  *See United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) (explaining that plain view doctrine allows the warrantless search and seizure of evidence when an officer is lawfully in the area in which he sees the object, has lawful access to the object, and the incriminating nature of the object is apparent).

Here, PFC Waters observed marijuana in the front-passenger seat of the Porsche while Harris' driver's side door was ajar. Given that PFC Waters observed the marijuana while he was conducting a registration check on the Defendant's vehicle, he was in a lawful position to view the contraband. Further, PFC Waters had a lawful right to access the marijuana because the traffic stop investigation was ongoing and the Defendant was not yet arrested. Lastly, PFC Waters explained in his Affidavits that the "green leafy substance" was immediately apparent to him as suspected

15

marijuana based on his knowledge, training, and experience. ECF No. 109-1, USA_000106; Ex. 1, USA_001025. Therefore, the subsequent warrantless search of the Defendant's vehicle and seizure of the evidence was legally permissible.

## II. THE COURT SHOULD NOT SUPPRESS THE EVIDENCE OBTAINED FROM THE PHONES AND RESIDENTIAL WARRANTS BECAUSE THE AFFIDAVIT ARTICULATED PROBABLE CAUSE FOR THE WARRANTS, AND EVEN IF THEY DID NOT, THE GOOD FAITH EXCEPTION APPLIES

The Court should deny the Defendant's motions to suppress evidence obtained from the two phone search warrants as well as the residential search warrant because all three warrants were supported by probable cause, and they were not overly broad because law enforcement understood that it could seize only items that were relevant to the crimes it was investigating. Even if the Court finds that the phone and residential warrants did not contain sufficient probable cause, the Defendant's argument that the good-faith exception should not apply to either warrant is without merit.

### A.    Legal Standard—Substantial Basis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  When reviewing the validity of a search warrant, the district court's role is "not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."  *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *United States v. Lawlor*, 996 F.2d 1578, 1581 (4th Cir. 1993) (the question is "whether the magistrate judge had a substantial basis for the decision").

A court reviewing a probable cause determination "must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118

(4th Cir. 1996). In this regard, "[a]n accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit" by way of a motion to suppress. *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (quoting *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011)). In other words, reviewing the magistrate judge's probable cause finding is generally limited to "the four corners of the application documents." *United States v. Somerlock*, 602 F. Supp. 3d 791, 799 (D. Md. 2022) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The magistrate judge's decision to issue the warrant is given "'great deference,'" and it should not be invalidated "'by interpreting [an] affidavi[t] in a hypertechnical, rather than a common sense, manner.'" *Lawlor*, 996 F.2d at 1581 (alterations in original) (quoting *Gates*, 462 U.S. at 236). A determination of probable cause is "one on which 'reasonable and prudent people would rely.'" *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Probable cause plainly "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The probable cause standard gives law enforcement officers "leeway to draw reasonable conclusions." *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

Even when a search warrant lacks probable cause, as long as officers are "reasonably relying on a warrant issued by a detached and neutral magistrate," the exclusionary rule does not apply because of the good-faith exception. *United States v. Leon*, 468 U.S. 897, 913 (1984). In *Leon*, the Supreme Court identified four instances where the good-faith exception did not apply:

1. "[T]he issuing magistrate wholly abandoned his judicial role";

2. The "warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid";

3. The "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

4. "[T]he issuing judge 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'"

*United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923).

### 1.    The Court Should Not Suppress the Evidence from the Phone Warrants.

#### a)    *The Phone Warrants Contained Sufficient Probable Cause.*

Contrary to the Defendant's motion, ECF No. 109, PFC Waters' affidavits provided sufficient probable cause to support the warrants to search the Defendant's black and camo iPhones. As described in the factual recitation above, PFC Waters explained in each warrant the basis for the stop of the Porsche. Then, in writing for the iPhones, PFC Waters explained how he had seized a gun and drugs from the Porsche. ECF No. 109-1, USA_000106-107; Ex. 1, USA_001025-1031. Lastly, in justifying the searches of the iPhones by noting that in his training, knowledge, and experience, cellphone evidence often establishes how an individual unlawfully purchased a firearm. *See* ECF No. 109-1, USA_000109-110; Ex. 1, USA_001032-1033.

The Court should reject the scattershot theories that the Defendant raises for suppressing the phones.

*First*, the Defendant mischaracterizes the affidavits when he suggests that the affidavits rely on his "mere presence" in the Porsche. ECF No. 109 at 7. This argument ignores that PFC Waters found a gun in the Porsche and that he justified searching the phones based on the unlawful gun possession.

*Second*, the Defendant argues that "a hearing in this matter will reveal that law enforcement accessed the phones to acquire information even before the acquisition of the warrants." ECF No. 109 at 8. The Defendant provides no basis for this speculative assertion.

*Third*, the Defendant argues that "there is not even the slightest support present for any nexus between the cellphones in question and for which the search warrants were sought and any likelihood that those items listed in the addendum to the search warrant would be found in that location." ECF No. 109 at 9. That argument again ignores that PFC Waters found a gun in the Porsche.

The Fourth Circuit's recent decision in *United States v. Henderson* illustrates the deficiencies in the Defendant's nexus argument. No. 22-4447, 2025 WL 1318001, at *1 (4th Cir. May 7, 2025). There, the Court rejected the defendant's argument that law enforcement did not have any nexus between the alleged crime and his cellphones that were recovered from the residential search warrant. *Id*. at *3. In that case, the officer recovered methamphetamine and a firearm during a traffic stop. *Id*. The driver told law enforcement that his out-of-state methamphetamine source of supply was currently staying at the residence armed with a gun. *Id*.

The officer requested a residential search warrant of the driver's home. *Id*. at *1. In the affidavit, the officer explained based, in part, on their training and experience, that drug traffickers typically maintain evidence of their activity on their "persons, inside their residences or nearby locations." *Id*. The officer requested to seize and search for items related to drug distribution such as records, messages, photographs, and telephone numbers on cellphones by explaining that such items could be located on digital devices, such as cellphones. *Id*. Law enforcement executed the residential search warrant and seized two cellphones that belonged to the defendant, Henderson. *Id*. Law enforcement recovered text messages indicative of drug dealing and photographs containing methamphetamine and a large amount of cash. *Id*.

Like the officer in *Henderson*, PFC Waters recovered a firearm and drugs from a vehicle during a traffic stop. Furthermore, as stated in his affidavits for the Defendant's black and camo

iPhones, PFC Waters sought search warrants for the two cellphones based, in part, on his training and experience that firearms trafficking is often facilitated via cellphones. USA_000111; Ex. 1, USA_001032. PFC Waters requested to seize and search for items related to firearms trafficking in his search warrant affidavits such as text messages, photographs and video, and address books. USA_000112; Ex. 1, USA_001033. Given the similarities between the items sought to be searched and the justifications provided to search the defendant's cellphones in the *Henderson* search warrant affidavit and the Defendant's black and Camo iPhones search warrant affidavit, *Henderson* should apply, and the Court should dismiss the Defendant's argument that no nexus existed between the Defendant's cellphones and the items that law enforcement requested to search.

> b)      *Neither of The Phone Warrants Was Overbroad.*

The Defendant asserts that the phone warrants are overbroad because "the requests were absent the type of particularity required by the [C]onstitution…" This argument fails because both phone warrants were sufficiently particular.

> At its core, the Fourth Amendment protects against general warrants that authorize "exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized." The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant.

*United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480-82 (1976)) (internal citations omitted).

> When a search is conducted pursuant to a warrant, it is limited in scope by the terms of the warrant's authorization. The terms of the warrant are not to be interpreted in a hypertechnical manner. Rather, they should be read with a commonsense and realistic approach, to avoid turning a search warrant into a constitutional straight jacket.

*Id.* (internal citations and quotation marks omitted).

The phone warrant for the black iPhone was limited to "electronically stored contents" that were "[r]elated to the crime being investigated." ECF No. 109-1, USA_000113. The Defendant does not—and cannot—argue why this limiting language is insufficient to address particularity.

Admittedly, the search warrant for the camo iPhone did not include the phrase "related to the crime being investigated" but other sections of both phone warrants and affidavits provide sufficient particularity. Notably, both warrants specifically "incorporated" the affidavits. ECF No. 109-1, USA_000113; Ex. 1, USA_001034.

*First*, the affidavits for both warrants made clear that law enforcement was seeking to seize specific "electronically stored contents" within the iPhones. No. 109-1, USA_000113; Ex. 1, USA_001035; *see United States v. Lustyik*, 57 F. Supp. 3d 213, 227 (S.D.N.Y. 2014) ("The inclusion of an illustrative list of seizable items brings the Warrants within the Fourth Amendment's particularity parameters.").

*Second*, both affidavits listed the specific criminal statutes that law enforcement was investigating. ECF No. 109-1, USA_000111; Ex. 1, USA_001032. This limitation renders the warrants specific. *See, e.g.*, *United States v. Nejad*, 436 F. Supp. 3d 707, 726–27 (S.D.N.Y. 2020) (denying motion to suppress where "each warrant notes, prior to the search and seizure authorization, that there is probable cause to believe that the target email accounts contain evidence

of involvement in money laundering, offering a false instrument for filing, and falsifying business records"); *Wieber v. Porter*, No. 2023 WL 3371050, at *7 (D. Colo. Mar. 24, 2023) (denying motion to suppress where warranted "cite[d] the items to be searched and seized, and describe[d] the nature of the crimes being investigated, *aff'd*, No. 23-1158, 2025 WL 635753 (10th Cir. Feb. 27, 2025).

*Third*, both affidavits authorized law enforcement to "seize the following items, evidence, and/or contraband."  ECF No. 109-1, USA_000113; Ex. 1, USA_001034.  The references to "evidence" and "contraband" demonstrate that the magistrate judge was permitting law enforcement to size only evidence of the illegal activity being investigated.

Because of the limitations contained within the affidavit itself, neither warrant authorized the government to "hav[e] 'unbridled discretion to rummage at will among a person's private effects.'"  *United States v. Zelaya-Veliz*, 94 F.4th 321, 337 (4th Cir.) (quoting *Arizona v. Gant*, 556 U.S. 332, 345 (2009)).  Treating the camo iPhone warrant as a general warrant because it omits the phrase "related to the crime being investigated" would require impermissibly reading the warrant "in a hypertechnical manner."  *Williams*, 592 F.3d at 519.

> c)    *The Defendant Cannot Argue That the Good Faith Exception Does Not Apply to the Phone Warrants.*

Even if the Court were to find that the phone search warrant affidavits did not provide probable cause for the searches, the Court should not grant the suppression motions because of the good-faith exception.  Simply put, none of the four factors that would vitiate the good-faith exception applies here.

*First*, there is no indication that the Prince George's County Circuit Court judges who authorized the at-issue affidavits "wholly abandoned" their judicial role in signing these warrants or that they were not neutral when signing the warrants. *See Perez*, 393 F.3d 457.

*Second*, the warrants were not "facially deficient" because they effectively set forth the places that law enforcement intended to search, and the evidence law enforcement could seize. *Id.*

*Third*, the iPhone affidavits were not "so lacking in indicia of probable cause" that the Court should suppress the warrant. Rather, as described above, the affidavits contained probable cause to support returning of the warrants.

*Fourth*, the Defendant does not argue that PFC Waters misled the Prince George's County Circuit Court judges in any respect—let alone *knowingly* did so.

### 2. The Court Should Not Suppress the Evidence from the Residential Warrant.

#### a) *The Warrant Contained Sufficient Probable Cause.*

Like his motion to suppress evidence from the iPhones, the Defendant's motion to suppress evidence from the residential search ignores the contents of the affidavit. The Defendant argues that the search warrant affidavit relied in large part on text messages and lacked nexus to the Delmar Residence. ECF No. 110 at 5.

As to the first argument, PFC Waters' affidavit highlighted a variety of inculpatory evidence tying the Defendant to the Delmar Residence. The affidavit showed pictures of the Defendant with bags of marijuana within the Delmar Residence. Additionally, he highlighted a text message where the Defendant directed his co-defendant to move all guns out of the Delmar Residence. ECF No. 110-1, USA_000125, USA_000130, USA_000134.

As to the second argument, PFC Waters linked the Defendant to the Delmar Residence because the Defendant had told law enforcement that he lived at the Delmar Residence and location data from the Defendant's phones showed that he was residing at the Delmar Residence. ECF No. 110-1, USA_000127-129.

23

> b)     *The Defendant Cannot Argue That the Good Faith Exception Does Not Apply to the Residential Warrant.*

Even if the Court found that the residential search warrant affidavit lacked probable cause, the good-faith exception permits the Government to introduce evidence recovered from the Delmar Residence.   The Defendant contends that the good-faith exception should not apply to the residential search warrant affidavit in part because the "requisite nexus between the address for which the search warrant was sought and any likelihood that those items listed in the addendum to the search warrant would be found in that location was slim" and the officers knew about the nonexistent nexus. ECF No. 110 at 5. Yet, legal precedent dictates that the affidavit sufficiently articulated the nexus between the Defendant criminal activity and his residence. *See United States v. Williams*, 548 F.3d 311, 319 (4th Cir. 2008) ("the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence") (internal citation omitted). The residential affidavit not only identified the Delmar Residence as the home of the Defendant, but it also requested the Court to seize items related to the criminal offenses that gave rise to the warrant, which was unlawful possession of marijuana and a firearm with a Glock switch.

## CONCLUSION

For the reasons set forth above, the Court should deny without an evidentiary hearing the Defendant's motions to suppress any evidence obtained from searches of his vehicle, cellphones, and residence.  ECF Nos. 109 and 110.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:        /s/

Christopher Sarma
Assistant United States Attorney

Lanay Mitchell
Special Assistant United States Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I caused the foregoing to be electronically filed through this Court's CM/ECF system, which will send notification of such filing to all parties.

<u>/s/ Christopher Sarma</u>
Assistant United States Attorney